# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MICHAEL MARIO MILLER,
                    Petitioner,

v.                                              Case No. 12-C-0945

BRIAN FOSTER, Warden,
Waupun Correctional Institution,
                    Respondent.

## DECISION AND ORDER

Michael Miller petitions for a writ of habeas corpus under 28 U.S.C. § 2254.

## I. BACKGROUND

In June 2003, Marques Messling was shot and killed while sitting inside a blue Chevy. Witnesses reported hearing the shots and seeing two African-American men with their arms extended into the car. After firing five to eight shots, the two men took off running, each with a gun in his hand. The state would eventually charge Miller and another man, Dominic Addison, with Messling's murder. Addison pleaded guilty. Miller proceeded to trial and was found guilty of first-degree intentional homicide while armed, as party to a crime. He was sentenced to life in prison with an extended-supervision eligibility date of February 2, 2054.

A key component of the state's case against Miller was a statement he made to Detective Gilbert Hernandez during a custodial interrogation. In this statement, Miller admitted that he was a member of a gang known as the "Two-Nine Hard Heads," a gang that had wanted Messling killed. Miller also admitted that, at the time of the shooting, he was armed with a gun and was with Addison and other men in a car that other witnesses had tied to the homicide. Miller stated that he and Addison started to

walk from their car to Messling's car. On the way to the car, Miller heard two gunshots and thought someone was shooting at him. Miller said that he pulled out his gun and began shooting at a blue Chevy. Once Miller emptied his weapon, he realized that he was shooting at the wrong car. He stated that it was Addison who fired at the correct blue Chevy and killed Messling. Miller stated that Addison later bragged about having been the one who actually shot and killed Messling.

In his federal petition, Miller alleges that his trial counsel rendered ineffective assistance in failing to adequately challenge the admissibility of this statement. As discussed below, defense counsel did file a motion to suppress the statement. However, Miller alleges that defense counsel rendered ineffective assistance in two respects: (1) she did not argue that the statement should have been suppressed as the fruit of an illegal search, and (2) she did not consult with Miller before the suppression hearing and thus failed to learn that Miller would have testified that, before the interview, he told Detective Hernandez that he did not want to be interviewed without counsel present. Miller also alleges that his appellate counsel rendered ineffective assistance in failing to adequately present his ineffective-assistance-of-trial-counsel claims to the state courts during his direct appeal. To discuss these claims, I must first describe the procedural history of this case, which is long and complex.

## A. Circumstances Leading to Miller's Statement

Shortly after Messling was killed, the police arrested Miller on an unrelated matter and interviewed him about the homicide. Miller made no incriminating statements during this interview and was released. However, six months later, the police executed what Miller describes as a "municipal warrant" for Miller's arrest.

(Habeas Br. at 2, ECF No. 42.)  The arrest occurred at 9:00 p.m. at the home of Golda Randolph, where Miller was staying as an overnight guest.  The police did not have a search warrant for Randolph's residence, although they did have the arrest warrant for Miller.  Still, they entered the home to arrest Miller.  At some point, Randolph consented to a search of her residence, but Miller contends that she only consented to a search for weapons and that she did not consent to any search at all until after the police had already entered the residence and arrested him.

Miller was detained at Randolph's residence for about ten minutes and did not make any incriminating statements during that time.  He was then taken to the police station.  At about 11:00 p.m., a pair of detectives interviewed Miller about Messling's murder.  The detectives would later testify that they advised Miller of his *Miranda* rights and that Miller agreed to speak with them.  Miller maintained his innocence throughout the interview.  However, at about 1:00 p.m. the next day, Miller was interviewed by Detective Hernandez.  It was during this interview, which lasted seven-and-a-half hours, that Miller gave the incriminating statement described above.  After Hernandez secured this statement, the state charged Miller with Messling's murder.

## B.    Motion to Suppress

Prior to trial, defense counsel, Anne Bowe, filed a motion to suppress Miller's statement to Detective Hernandez.  The trial court held what in Wisconsin is known as a "*Miranda/Goodchild* hearing" to determine whether the statement was obtained in violation of *Miranda* or was given involuntarily.  *See Miranda v. Arizona*, 384 U.S. 436 (1966); *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244 (1965).

At the hearing, the various detectives who interviewed Miller during the course of the investigation into Messling's murder testified. Each detective testified that Miller was given *Miranda* warnings before each interview, that Miller did not invoke his right to counsel or right to remain silent, and that Miller agreed to speak to them without an attorney present. However, Detective Hernandez acknowledged that Miller mentioned something about having retained an attorney. (Tr. of Suppression Hr'g at 24.) Hernandez testified that when Miller said this, he advised him that he had a right to have the attorney present, but Miller said he wanted to talk without his lawyer present. (*Id.*) Hernandez also testified that it was his belief that the attorney in question, Michael Jackelen, represented Miller in connection with a different matter and not on the Messling homicide. (*Id.*) Hernandez also testified that after Miller gave his statement, Hernandez wrote up a summary and had Miller initial it at various spots. Miller initialed a paragraph that stated Miller waived his *Miranda* rights and agreed to speak to the detectives without his attorney present. (*Id.* at 25–28.) When the prosecutor asked Hernandez whether Miller "[a]t any time" invoked "any of his rights," including his right to remain silent, his "right to have a lawyer present," his "right to consult with a lawyer," or "anything like that," Hernandez answered "No." (*Id.* at 27–28.)

On cross-examination, defense counsel tried to establish that Detective Hernandez knew before the interview that Miller was represented by Attorney Jackelen. (*Id.* at 31.) However, Hernandez maintained that "[t]he first time [the issue regarding Miller's being represented by Jackelen] came up was when [Miller] was being advised [of his rights]," at which point Miller indicated that "he did have a lawyer but also indicated that he didn't need him present." (*Id.*)

After the state presented its witnesses, the court asked whether the defense wished to call witnesses. Defense counsel responded: "No. I will just state for the record, that I am aware of the information about the lawyer. That I've discussed this with Mr. Miller. That his recollections are sufficiently similar to those of the witnesses that I do not need to—I did not think it's necessary to present additional information." (*Id.* at 39.) When the trial court gave the parties an opportunity to present arguments based on the testimony, defense counsel declined and stated that the court should "rule based on the record." (*Id.* at 41.)

The trial court found Miller's statement admissible. (*Id.* at 41–46.) The court stated that it was "uncontroverted" that Miller received proper *Miranda* warnings and did not invoke his right to counsel or to remain silent. (*Id.* at 41–42.) The court also found that the statement was voluntary. (*Id.* at 42–46.)

## B. Postconviction Hearing

After Miller was convicted, Miller's appellate counsel initiated a no-merit appeal. However, the Wisconsin Court of Appeals rejected the no-merit report and directed the public defender's office to appoint new counsel, at which time the public defender's office appointed Attorney Jeffrey Jensen. Jensen decided to advance claims that Attorney Bowe rendered ineffective assistance during the suppression hearing. In Wisconsin, to present such a claim on direct appeal, a defendant must first file a postconviction motion in the trial court. Jensen filed such a motion, alleging that trial counsel was ineffective in (1) not seeking suppression of the statement as the fruit of an illegal search of Randolph's residence, and (2) not having Miller testify at the suppression hearing that he invoked his right to counsel prior to giving his incriminating

statement to Detective Hernandez. The trial court held a hearing on this motion, which is known as a "*Machner* hearing," at which both Miller and Bowe testified.

Before the court heard the testimony of the witnesses, it and counsel discussed the issues to be addressed. Attorney Jensen began by identifying the two ineffective-assistance claims at issue, one based on the search of Randolph's residence and the other based on not having Miller testify at the suppression hearing. At this point, Jensen stated that he intended to introduce evidence showing that Miller had standing under the Fourth Amendment to challenge the search of Randolph's residence. The state responded that it would concede Miller had standing to challenge the search as an overnight guest, and that the police did not have a search warrant for Randolph's residence, even though they had a warrant for Miller's arrest. (Tr. of *Machner* Hr'g at 9, 11–12.) The state explained that it would argue that even if the search was illegal, the exclusionary rule would not apply to Miller's statement, which he did not give until the day after the search, when he was at the police station. (*Id.* at 10–11.) The state cited *New York v. Harris*, 495 U.S. 14 (1990), in support of that argument. The state argued that, in light of *Harris*, trial counsel could not have performed deficiently in failing to move to suppress the statement on Fourth Amendment grounds. Given the state's position, the court and Jensen agreed that there was no need to present evidence at the hearing concerning Miller's standing to challenge the search. Instead, the testimony would focus on whether the statement was attenuated from the search and whether trial counsel erred in not having Miller testify at the suppression hearing. (*Id.* at 12.)

Miller was the first witness to testify. He testified that after he was arrested in Randolph's home, the police detained him at the scene for about ten minutes and then

took him to the police station.  Miller testified that while he was being "processed" at the station, he told an officer that he did not want to talk to any detectives and that he wanted his lawyer.  (*Id.* at 15.)  This officer escorted Miller to an interrogation room. When a detective entered the room, Miller immediately told him that he did not want to talk and that he wanted his lawyer.  (*Id.* at 17, 20.)  Miller testified that his lawyer at the time was Attorney Jackelen, who was representing him in connection with his status as a suspect in the Messling murder.  (*Id.* at 18.)  Miller testified that, despite his request to remain silent and for his attorney, the detectives continued to question him for about two hours.  (*Id.* at 22.)  However, Miller did not make any incriminating statements during this interview and he was returned to his cell for the night.

Miller testified that, the next day, he was taken from his cell and brought to an area where he saw Detective Hernandez.  (*Id.* at 23.)  Miller testified that he immediately told Hernandez that he had a lawyer and that he did not want to talk.  (*Id.*) According to Miller, Hernandez replied: "I know that you didn't do what they sayin' you did. We got to take your statement before we can release you." (*Id.* at 24.)  Miller was then taken to an interrogation room, where Detective Hernandez read him his *Miranda* rights.  (*Id.*)  At this point, Miller did not renew his request for counsel, and he agreed to talk to Detective Hernandez without his lawyer present.  Miller stated that he did this because Hernandez had told him that he needed to make a statement before the police could release him.  (*Id.* at 25.)  Later, on cross-examination, Miller would explain that he believed Hernandez when he said he needed to make a statement before he could be released because Miller had a past experience in which he was arrested but then released after he gave a statement.  (*Id.* at 42–43.)

On direct examination, Miller also claimed that, around the time of his preliminary hearing, he told Attorney Bowe that he had requested counsel before Detective Hernandez interviewed him. (*Id.* at 26–27.) He also claimed that he told Bowe to contact Jackelen and discuss this issue with him. (*Id.*) Miller testified that, in response, Attorney Bowe told him not to worry about the statement because it was helpful to his defense. (*Id.* at 27.) Miller also testified that, at the suppression hearing, Miller tried to tell Bowe about having requested counsel but she stopped him and again told him not to worry about the statement because it was helpful to his defense. (*Id.* at 28–29.) Miller testified that, had Bowe not told him that the statement was helpful to his defense, he would have testified at the suppression hearing consistently with his testimony at the *Machner* hearing. (*Id.* at 29–30.)

On cross-examination, Miller altered his testimony somewhat by conceding that he never told Bowe that he had invoked his right to counsel before making his statement to Hernandez. But he testified that this was because Bowe kept telling him not to worry about the statement because it was helpful to his defense. (*Id.* at 33–38.) Miller also testified that Attorney Bowe never interviewed him or discussed the circumstances leading to his statement before the suppression hearing. (*Id.* at 48.)

The state called Attorney Bowe as a witness. The state first asked her to explain her reasons for not seeking suppression of Miller's statement on the ground that it was the fruit of an illegal search of Randolph's apartment. Bowe stated that, for two reasons, she thought she did not have a good-faith basis for seeking suppression on that ground. First, she reviewed the discovery and concluded that Randolph had consented to the search. (*Id.* at 57–58.) Second, she believed that there was a

reasonable period of time between the arrest and the statement, and that under *New York v. Harris*, the statement would be admissible even if the police illegally entered Randolph's residence to arrest Miller. (*Id.*)

The state next questioned Bowe about whether she knew at the suppression hearing that Miller claimed to have made requests for counsel before Detective Hernandez interviewed him. Bowe testified that Miller never told her that he had made these requests and that, if he had done so, she certainly would have considered having him testify to those facts at the suppression hearing. (*Id.* at 60–63.) Bowe testified that, at the suppression hearing, Miller told her that the testimony Detective Hernandez gave during the hearing was accurate and that he told the detective that he had a lawyer but wanted to make a statement without him present. (*Id.* at 60, 62–63.) Bowe also denied telling Miller that she preferred to have the statement admitted because it was helpful to his defense. (*Id.* at 64–65.) She testified that, instead, she told Miller that it was preferable to have the statement suppressed but, in her experience, it was likely coming in. (*Id.* at 63–65.) She testified that she discussed with Miller that if the statement was admitted they would have to use it in his defense to the best of their abilities. (*Id.*)

When Attorney Jenson cross-examined Bowe, he first questioned her about her knowledge of the scope and timing of Randolph's consent to the search of her residence. (*Id.* at 66–67.) Jensen tried to make the point that Randolph did not consent to the search until after Miller had already been arrested and that her consent was limited to a search for weapons. Bowe testified that it was her recollection that the evidence showed that Randolph consented to a search before Miller was arrested. (*Id.* at 67, 69–70.)

Turing to Miller's alleged request for counsel, Jensen asked Bowe whether she ever talked to Miller about whether he waived or invoked his right to counsel. (*Id.* at 71.) Bowe said that she did. (*Id.*) When Jensen asked where the conversation took place, Bowe said that it occurred at the jail. (*Id.*) Bowe then testified that she had another conversation with Miller during the suppression hearing, after Detective Hernandez had testified. (*Id.*) She testified that, during this conversation, Miller told her that everything Hernandez had testified to was accurate. (*Id.*) Therefore, she advised Miller not to testify.

After the hearing concluded, the court accepted written briefs from the parties and later issued an oral ruling. The court found that Attorney Bowe did not render deficient performance in either of the aspects alleged by postconviction counsel. On the Fourth Amendment aspect, the trial court concluded that the statement was so attenuated from the search that, even if the search was illegal, a motion to suppress the statement on Fourth Amendment grounds would not have been successful. (Tr. of Jan. 26, 2010 Oral Dec. at 4–6, ECF No. 35-1.) On the right-to-counsel aspect, the court concluded that Miller did not inform Bowe that he would have testified that he asked for counsel prior to being interrogated by Detective Hernandez. (Id. at 7.) The court also found that Bowe had advised Miller that because the statement was likely going to be admitted, their best strategy was to use the statement to argue self-defense. (*Id.* at 7–8.)

## C.  Direct Appeal to Wisconsin Court of Appeals and Wisconsin Supreme Court

Attorney Jensen also served as Miller's appellate counsel during his direct appeal to the Wisconsin Court of Appeals. In his brief, he raised the same two ineffective-

assistance-of-trial-counsel claims that he raised in his postconviction motion. The court of appeals rejected both claims. With respect to the Fourth Amendment claim, the court did not address the trial court's attenuation finding. Instead, the court determined that trial counsel did not perform deficiently because she rationally concluded that Randolph had consented to the search. On the right-to-counsel claim, the court found that "the trial court assessed the credibility of both Miller and trial counsel and chose to accept trial counsel's testimony as true." (Op. of March 15, 2011 at 12.) The court stated that the trial court's findings of fact were not clearly erroneous. The court of appeals then concluded that it was not deficient performance for trial counsel to decline to have Miller testify "where Miller never told trial counsel that he had invoked his right to counsel and told trial counsel that Hernandez's testimony was accurate." (*Id.* at 13.)

After the court of appeals affirmed Miller's conviction, Jensen filed a petition for review with the Wisconsin Supreme Court. In the petition, Jensen argued that Bowe rendered ineffective assistance in not filing a motion to suppress Miller's statement based on the illegal search of Randolph's apartment. Jensen did not argue that Bowe was also ineffective in failing to have Miller testify at the suppression hearing about his alleged requests for counsel. The Wisconsin Supreme Court denied the petition for review.

## D. Initial Federal Habeas Petition and Filing of Motion under Wis. Stat. § 974.06

On September 17, 2012, Miller, now proceeding pro se, initiated the present action by filing a petition for a writ of habeas corpus. In the petition, he alleged the same two claims of ineffective assistance of trial counsel that he raised in the state courts, along with a third claim that he has since abandoned. In addition, on October

11, 2012, Miller filed a pro se motion for postconviction relief in the state trial court under Wis. Stat. § 974.06. I eventually stayed this case under *Rhines v. Weber*, 544 U.S. 269 (2005), to allow Miller to exhaust the state avenues to relief that remained available to him. (Order of April 11, 2013.)

In his motion under Wis. Stat. § 974.06, Miller reasserted the same claims of ineffective assistance of trial counsel that he raised on direct appeal, but he also alleged that appellate counsel rendered ineffective assistance in his postconviction capacity.[1] Miller alleged that postconviction counsel was ineffective in failing to make an argument based on a case that the Wisconsin Supreme Court had not decided at the time of his direct appeal (*State v. Forbush*, 332 Wis. 2d 620 (2011)), and in failing to have Golda Randolph testify at the *Machner* hearing to establish that she had not consented to the search of her residence. The trial court denied the motion. Miller appealed, but the Wisconsin Court of Appeals affirmed. Miller sought review by the Wisconsin Supreme Court, which was denied.

## E. *Knight* Petition

Miller next filed a pro se petition for a writ of habeas corpus in the Wisconsin Court of Appeals, alleging that he received ineffective assistance of appellate counsel during his direct appeal to that court. In Wisconsin, a habeas petition filed in the court of appeals is the proper way to raise a claim of ineffective assistance of appellate

---

[1] Wisconsin draws a distinction between postconviction counsel and appellate counsel, both of whom are involved in a direct appeal from a criminal conviction. *See State ex rel. Rothering v. McCaughtry*, 205 Wis. 2d 675, 678–79 (Ct. App. 1996). Postconviction counsel files the initial postconviction motion in the trial court and conducts any hearing that may be needed on the claims that the defendant will pursue on appeal. Appellate counsel files briefs and presents oral argument in the court of appeals. Because Miller's motion under Wis. Stat. § 974.06 alleged ineffective assistance of postconviction counsel, it was properly filed in the trial court under *Rothering*.

counsel.  Such a petition is known as a "*Knight* petition," after *State v. Knight*, 168 Wis. 2d 509 (1992).

In his petition, Miller alleged that appellate counsel did not adequately brief his claims of ineffective assistance of trial counsel.  With respect to the Fourth Amendment issue, Miller argued that trial counsel did not cite the right cases concerning attenuation. (*Knight* Pet. at 8–14, ECF No. 35-5.)  With respect to the right to counsel, Miller argued that appellate counsel briefed the claim under the Fifth Amendment when he should have briefed it as an issue concerning Miller's right to counsel under the Sixth Amendment.  (*Id.* at 14–16.)  The Wisconsin Court of Appeals denied the *Knight* petition.  Miller again sought review by the Wisconsin Supreme Court, and again that court denied the petition for review.

## F.    Amended Federal Habeas Petition

In May 2016, Miller returned to federal court.  He initially filed a pro se amended petition.  But he later retained counsel, and in December 2016, counsel filed another amended petition, which is now the operative petition in this case.  The parties then filed briefs on the merits of the petition.  In his briefs, Miller raises the same two claims of ineffective assistance of trial counsel that he pursued in state court: (1) that counsel was ineffective in not seeking suppression of the statement as the fruit of an illegal search, and (2) that counsel was ineffective in failing to adequately argue that the statement should have been suppressed because Miller had made requests for counsel.  Miller also alleges that Attorney Jensen, as appellate counsel, rendered ineffective assistance in his presentation of these claims to the Wisconsin courts.[2]

_____

[2]
In his habeas briefs, Miller's arguments concerning Jensen's ineffectiveness are slightly different than they were when he presented them to the state courts in his pro se motion

## II. DISCUSSION

**A.    Claims Based on Failure to Seek Suppression on Fourth Amendment Grounds**

I start with Miller's claim that his trial counsel rendered ineffective assistance in failing to seek suppression of his statement as the fruit of an illegal search.   The Wisconsin Court of Appeals adjudicated this claim on the merits, and therefore the standard of review of 28 U.S.C. § 2254(d) applies.   Under that standard, I may grant relief only if the court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.

To establish a claim of ineffective assistance of counsel, Miller must show that his attorney performed deficiently and that he suffered prejudice as a result.  *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984).  To establish deficient performance, Miller must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms.   *Id.* at 687.   This requires showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.   *Id.*   To establish prejudice, Miller must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.   *Id.* at 694.

---

under Wis. Stat. § 974.06 and in his *Knight* petition.  However, the respondent does not argue that Miller did not fairly present his current claims involving Jensen's ineffectiveness to the state courts.  Therefore, I will consider his current arguments on the merits.

At the *Machner* hearing, trial counsel gave two reasons for not moving to suppress Miller's statement as the fruit of an illegal search of Randolph's apartment: (1) she thought Randolph had consented to the search, and (2) under *New York v. Harris*, 495 U.S. 14 (1990), the statement would be admissible even if the search was illegal. As to counsel's first reason, Miller argues that trial counsel did not conduct a reasonable investigation into the circumstances surrounding the timing and scope of Randolph's consent, and that if she had done so, she would have learned that Randolph did not consent to the search that resulted in Miller's arrest. I will not consider this argument because it is clear that trial counsel's second reason—based on *New York v. Harris*—was itself sufficient to make her decision to not seek suppression of the statement on Fourth Amendment grounds objectively reasonable.

In *New York v. Harris*, the Supreme Court held that "where the police have probable cause to arrest a suspect, the exclusionary rule does not bar the State's use of a statement made by the defendant outside of his home, even though the statement is taken after an arrest made in the home in violation of *Payton [v. New York*, 455 U.S. 573 (1980)]." 495 U.S. at 21. Here, the police had probable cause to arrest Miller—indeed, they had a warrant for his arrest. Moreover, Miller made his incriminating statement outside of Randolph's home, namely, at the police station on the day following his arrest. Thus, even if the police violated Miller's Fourth Amendment rights when they arrested him inside a home in which he was an overnight guest,[3] his

---

[3] It is at least arguable that the police did not violate Miller's Fourth Amendment rights when they entered Randolph's home to execute the arrest warrant, even if Randolph did not consent to the search, and even if Miller had a legitimate expectation of privacy in Randolph's home. As the Seventh Circuit has recognized, "every court of appeals to consider the issue has held that law enforcement officers do not need a search warrant in addition to an arrest warrant to enter a third party's residence in order to effect an arrest."

statement would have been admissible. Accordingly, trial counsel correctly determined that she did not have a good-faith basis to seek suppression of the statement on Fourth Amendment grounds.

Miller contends that *Harris* does not control the admissibility of his statement because, unlike in *Harris*, here law enforcement did not have probable cause to arrest him "for the crime about which it extracted his inculpatory statement." (Habeas Br. at 29, ECF No. 42.) But the reasoning of *Harris* does not turn on whether the police had probable cause to arrest the suspect for the specific crime to which the statement pertains. Rather, *Harris* focuses on the legality of the suspect's custody at the time he or she makes the statement. The Court reasoned that a suspect's continued custody outside the home following an otherwise lawful arrest is not rendered unlawful simply because the police made an unlawful entry into the home to effect the arrest. *See Harris*, 495 U.S. at 18 ("Nothing in the reasoning of [*Payton*] suggests that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house."). The Court concluded that if the continued custody was lawful, then it would not serve the purposes of the Fourth Amendment to apply the exclusionary rule to a statement made during that custody, even though the custody was initiated in violation of the Fourth Amendment. *Id.* at 17–21. Here, Miller does not dispute that he was lawfully in custody pursuant to an arrest warrant when he made his statement to Detective Hernandez at the police station. Thus, under *Harris*, the Fourth Amendment exclusionary rule does not apply to

---

*United States v. Jackson*, 576 F.3d 465, 468 (7th Cir. 2009). Here, the police had a warrant for Miller's arrest, and thus they likely could have entered Randolph's home to effect the arrest, provided they had reason to believe that Miller was inside. However, because the respondent has not raised this issue, I do not consider it further.

his statement, regardless of its subject matter, and regardless of whether the police committed a Fourth Amendment violation when they took him into custody.

In any event, Miller's argument that *Harris* is distinguishable from this case is novel and not supported by existing cases. It is not the kind of argument that every reasonable attorney would make under the circumstances. For this reason, even if the argument had merit, trial counsel would not have been ineffective in failing to make it. Accordingly, I will not grant relief on Miller's claim that trial counsel was ineffective in failing to seek suppression of the statement on Fourth Amendment grounds.

Miller also alleges that his appellate counsel was ineffective in failing to properly argue that trial counsel was ineffective in failing to seek suppression of the statement on Fourth Amendment grounds. However, because the underlying claim of ineffective assistance of trial counsel would have failed, Miller could not have been prejudiced by any deficient performance by appellate counsel in connection with this claim. *See Warren v. Baenen*, 712 F.3d 1090, 1105–06 (7th Cir. 2013). Therefore, I also reject Miller's claim of ineffective assistance of appellate counsel to the extent that it is based on trial counsel's failure to pursue the Fourth Amendment issue.

**B.    Claims Based on Failure to Develop Argument that Miller Asked For Counsel Before the Interview that Resulted in His Incriminating Statement**

I next address Miller's argument that his trial counsel was ineffective in failing to present his testimony at the suppression hearing about his alleged requests for counsel. Miller argues that his testimony on this point would have established that his statement was obtained in violation of his Fifth Amendment rights. Miller cites *Edwards v. Arizona*, which holds that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing

only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." 451 U.S. 477, 484–85 (1981). According to Miller's testimony at the *Machner* hearing, he told Detective Hernandez that he did not want to be questioned without his lawyer. (Tr. of *Machner* Hr'g at 23–24.) Miller claims that, nonetheless, Hernandez initiated further questioning and eventually obtained the incriminating statement. (*Id.*)

The central issue with respect to this claim is whether Miller's trial counsel performed deficiently in failing to learn that Miller would have testified that he told Hernandez that he wanted counsel before Hernandez initiated further questioning.[4] Based on the testimony at the *Machner* hearing, the state trial court found that Miller never told Attorney Bowe that he made a request for counsel before Detective Hernandez interviewed him. (Tr. of Jan. 26, 2010 Oral Dec. at 7, ECF No. 35-1.) Miller does not argue that this factual finding is erroneous. Instead, Miller argues that Attorney Bowe performed deficiently because she failed to reasonably investigate whether he requested counsel before Hernandez interrogated him. In other words,

---

[4] Miller also points to other omissions by trial counsel at the suppression hearing that he contends were objectively unreasonable. *See, e.g.,* Reply Br. at 12, ECF No. 47 (listing ten omissions by trial counsel). However, none of the other omissions would be relevant unless Miller first established that trial counsel performed deficiently in failing to learn that Miller would have testified that he asked for counsel. For example, Miller faults trial counsel for not introducing evidence at the suppression hearing that Miller had retained Attorney Jackelen in connection with the homicide or that the assistant district attorney handling the case had instructed the detectives that they should not interview Miller unless Jackelen was present. However, Miller does not contend that any of this evidence, on its own, would have provided grounds for suppressing Miller's statement. Rather, this other evidence would have been relevant only to the extent that it supported Miller's testimony that he had demanded to see his attorney before the interview. So unless trial counsel performed deficiently in failing to discover that Miller would have testified that he made such a demand, counsel's failures on these other fronts would not support a claim of ineffective assistance.

Miller concedes that Bowe did not know that he would have testified at the suppression hearing that he requested counsel, but he contends that her lack of knowledge on this point stemmed from her own failure to inquire, which was objectively unreasonable.

To support his claim that Bowe failed to investigate this issue, Miller cites his own testimony at the *Machner* hearing, in which he claims that when he tried to tell Bowe that he told Hernandez that he wanted his lawyer, Bowe brushed him off and told him not to worry about the statement because it could be used to argue self-defense. (Br. in Supp. at 16, citing Tr. of *Machner* Hr'g at 27.) However, at the *Machner* hearing, Bowe denied telling Miller not to worry about the statement or that his defense would be stronger if the statement were admitted. (*Id.* at 63–65.) Specifically, she testified that she "certainly didn't tell him that he shouldn't testify or he shouldn't have the motion or he shouldn't try to suppress [the statement] because we wanted to have the statement in for self-defense." (*Id.* at 63.) Instead, she testified that she talked to Miller "about the almost inevitability of the statement being admitted because of his admission that he did not invoke a lawyer when he talked to Detective Hernandez and that what we would have to do then is to use that statement to his advantage to the best of our ability." (*Id.* at 63–64.)

After the *Machner* hearing, the trial court, in its oral ruling, relied on Bowe's testimony that she did not tell Miller it was better to have the statement admitted but instead told Miller that if it was admitted they could use it to argue self-defense. (Tr. of Jan. 26, 2010 Oral Dec. at 7.) On direct appeal, the Wisconsin Court of Appeals considered the trial court to have "implicitly found trial counsel more credible" and to have "accepted her version of events." (Op. of March 15, 2011 at 12, ¶ 27.) The court

of appeals then determined that the trial court did not clearly err in "accept[ing] trial counsel's testimony as true." (*Id.* ¶ 29.)

Under 28 U.S.C. § 2254(d)(2), I am bound by the state courts' factual findings unless the petitioner shows that they were unreasonably determined.[5] In his habeas briefs, Miller does not argue that the state courts unreasonably determined the facts when they accepted trial counsel's testimony as true. Accordingly, I am bound by their factual findings and must likewise accept Bowe's testimony at the *Machner* hearing as true. But I note that, even if I were not bound by the state courts' findings, I could not, based on the present record, disagree with those findings. Miller has not presented any evidence to me that was not presented to the state courts, and he has not argued that I may hold a new evidentiary hearing at which I would independently consider his and Bowe's testimony and decide whom to believe. Rather, he simply cites his testimony from the *Machner* hearing and asserts that it reflects what actually happened. But of course, I cannot grant habeas relief on the mere assumption that Miller's prior testimony was true and Bowe's conflicting prior testimony was false. Thus, I cannot find that Bowe cut Miller off when he attempted to tell her about his requests for counsel because she preferred to have the statement admitted to argue self-defense.

Miller also suggests that Bowe should have more thoroughly interviewed him about whether he requested counsel. However, at the *Machner* hearing, Miller's

---

[5] In his opening brief, Miller suggests that the state courts did not adjudicate this claim on the merits, and that therefore the standard of review in § 2254(d) does not apply. (Br. at 12.) However, Miller does not develop an argument in support of this suggestion, and therefore I consider any such argument waived. Moreover, the Wisconsin Court of Appeals on direct appeal addressed the merits of Miller's claim that trial counsel was ineffective in failing to introduce evidence that Miller invoked his right to counsel before he gave the incriminating statement. (Op. of March 15, 2011 at 10–13.) Therefore, § 2254(d) clearly applies.

postconviction counsel asked Bowe whether she ever talked to Miller "about whether he waived his right to counsel or whether he invoked his right to counsel." (Tr. of *Machner* Hr'g at 71.) Bowe answered, "I did," and then she said that her conversation with Miller on this topic occurred at the jail. (*Id.*) Bowe also testified that she had a second conversation with Miller on this point during the suppression hearing, and that that's when Miller told her that Detective Hernandez's testimony at the hearing—during which Hernandez testified that Miller "at [no] time" requested counsel (Tr. of Suppression Hr'g at 27–28)—was accurate. (Tr. of *Machner* Hr'g at 71) Aside from his claim that Bowe cut him off because she preferred to use his statement to argue self-defense—which, as noted, the state courts rejected—Miller does not point to any evidence suggesting that Bowe's discussions with him about whether he asked for counsel were deficient. At the *Machner* hearing, Miller did testify that Bowe never had any discussions with him while he was at the jail (Tr. at 48), but again, this only sets up a factual dispute that I am in no position to resolve in Miller's favor. As noted, the state courts credited Bowe's testimony rather than Miller's, and anyway Miller does not argue that I may hold a new evidentiary hearing and credit his testimony rather than Bowe's. Thus, I cannot find that Bowe failed to conduct a reasonable inquiry into whether Miller would testify at the suppression hearing that he asked for counsel before being interrogated by Detective Hernandez. Miller is not entitled to relief on this claim to the extent it is based on trial counsel's performance.[6]

---

[6] I note that the respondent also contends that Miller procedurally defaulted this claim of ineffective assistance of trial counsel by not presenting it to the Wisconsin Supreme Court on direct appeal. However, because the claim fails on the merits, I need not explore whether Miller defaulted it. *See Carrion v. Butler*, 835 F.3d 764, 772 (7th Cir. 2016) (noting that court can bypass procedural-default issue if it determines that potentially defaulted claim fails on the merits).

Miller next contends that his appellate counsel, Jensen, rendered deficient performance in briefing this claim of ineffective assistance of trial counsel in the Wisconsin Court of Appeals. The alleged deficiencies include failing to file a reply brief, arguing this claim as a Sixth Amendment right-to-counsel claim rather than a Fifth Amendment *Miranda* claim, and relying too heavily on a series of rhetorical questions. Importantly, however, Miller does not contend that Jensen performed deficiently at the *Machner* hearing in connection with this claim. That is, he does not contend that Jensen failed to adequately investigate this claim or failed to effectively cross-examine Bowe about her investigation into whether Miller asked for counsel before Detective Hernandez interviewed him. (*See* Reply Br. at 15 (Miller states that he is not claiming that Jensen failed to develop the facts at the *Machner* hearing).) But as explained above, based on the record established at the *Machner* hearing, the state courts found that Bowe was more credible than Miller and accepted her testimony rather than Miller's. Likewise, as explained, the record developed at the *Machner* hearing does not show that Bowe failed to have a discussion with Miller about whether he invoked his right to counsel. Based on this record and the trial court's finding Bowe more credible than Miller, Miller had virtually no chance of succeeding on his claim of ineffective assistance of trial counsel on appeal, no matter how well appellate counsel briefed the claim. The record developed at the *Machner* hearing simply did not establish that Bowe failed to investigate whether Miller asked for counsel prior to being questioned by Hernandez. Thus, even if appellate counsel rendered deficient performance in briefing this claim, Miller could not have been prejudiced. *See Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010) (recognizing that to show prejudice based on deficient performance

by appellate counsel, defendant must show that there is a reasonable probability that, but for such deficient performance, the outcome of the appeal would have been different). Accordingly, Miller is not entitled to relief on this claim of ineffective assistance of appellate counsel.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Miller's petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 28th day of March, 2018.


s/Lynn Adelman_____
LYNN ADELMAN
District Judge